# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Case No. 17-10064 KG) |
| | ) | |
| Chieftain Sand and Proppant, LLC, *et al.*, | ) | Chapter 11 |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

### DEBTORS' MOTION FOR ORDERS (I)(A) APPROVING BIDDING PROCEDURES AND AUCTION AND (B) SCHEDULING SALE HEARING AND APPROVING NOTICE THEREOF; (II) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF

The above-referenced debtors and debtors in possession (collectively, the **"Debtors"**), file this motion (this "**Motion**") for entry of orders (I)(A) approving bidding procedures and related auction and (B) scheduling a sale hearing and approving notice thereof (the **"Bidding Procedures Order"**); (II) authorizing the sale of substantially all of the Debtors' assets free and clear of all liens, claims, encumbrances, and other interests; (III) authorizing the assumption and assignment of certain executory contracts and unexpired leases and establishing procedures to determine cure amounts and establishing deadlines for objections with respect thereto; and (IV) granting related relief (the **"Approval Order"**). In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the

---

[1]    The Debtors in these chapter 11 cases, and the last four digits of their respective federal tax identification numbers, are Chieftain Sand and Proppant, LLC (1729) and Chieftain Sand and Proppant Barron, LLC (0418). The Debtors' service address is:  331 27th Street, New Auburn, WI 54757.

District of Delaware dated as of February 29, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the **"Local Rules"**) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. The statutory predicates for the relief requested herein are sections 105(a), 363, 364, 365, 503, 507 and 554 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the **"Bankruptcy Code"**) and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), and Local Rule 6004-1.

## Background

2.     On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition with the Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases. As of the date hereof, no creditors' committee has been appointed.

3.     Factual background relating to the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in detail in *the Declaration of Victor A. Serri in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the **"First Day Declaration"**) and is incorporated herein by reference.

## Facts Specific to the Relief Requested

4.     As discussed in detail in the First Day Declaration, Chieftain is a privately owned producer of hydraulic fracturing sand ("***Frac Sand***"), a monocrystalline sand used as a proppant

(a solid material, typically sand, designed to keep an induced hydraulic fracture open) to enhance oil and gas product recovery in petroleum-rich unconventional shale deposits.  Prior to the Petition Date, the Debtors, in consultation with their legal, financial, and restructuring advisors, evaluated a broad range of strategic alternatives to address their liquidity pressures and lack of immediately available liquidity. As described in the First Day Declaration, the Debtors, with the assistance of a retained investment banking firm, pursued several marketing and sale processes for substantially all of their assets over a period of approximately seven months prior to the Petition Date.

5.     As a result of extensive arm's length, good faith negotiations among Sellers and Buyer and their respective advisors, the Debtors determined that the Asset Purchase Agreement (the *"**Agreement**"*) submitted by Energy Capital Partners Mezzanine Opportunities Fund A., L.P. (the "**Buyer**") represents the best opportunity for the Debtors to maximize the value of their assets and serve as a basis for conducting an auction to seek higher and/or better offers.

6.     In order to provide the Debtors with the liquidity needed to accomplish a sale of substantially all of their assets under section 363 of the Bankruptcy Code, Buyer agreed to provide debtor-in-possession financing to the Debtors, and a motion to approve the financing was filed with the Court on the Petition Date.  The interim and final orders entered by the Bankruptcy Court authorizing such debtor-in-possession financing is hereinafter referred to as the "DIP Order."

7.     The Debtors have negotiated and entered into the Agreement with the DIP Lender (i.e., Buyer), pursuant to which Buyer will acquire the Assets on the terms and conditions specified therein.  A copy of the Agreement will be placed in the data room set up by the Debtors for prospective bidders no later than two (2) business days after the Petition Date.

8.     The sale transaction pursuant to the Agreement is subject to competitive bidding as set forth herein, the Bidding Procedures, and the Bidding Procedures Order.  Pursuant to the terms of the Agreement, Buyer has agreed to purchase the Assets for a purchase price of (i) $5,000,000 (the **"Credit Bid Amount"**) pursuant to section 363(k) of the Bankruptcy code, plus (ii) an amount in cash sufficient to pay and used to pay in full all Obligations owing under and as defined in, the DIP Credit Agreement, plus (iii) an amount in cash equal to the Undisputed Cure Costs, plus (iv) an amount in cash necessary to fund the wind-down of the Sellers' estates in accordance with the Approved Wind-Down Budget (as defined in the DIP Order), which shall not exceed $885,620.

### Summary of Relief Requested

9.     The Debtors believe that the solicitation of bids and a sale of substantially all of their assets on the timeline proposed herein allow the Debtors to maximize value for all stakeholders while minimizing administrative expenses. During this process, the Debtors will continue to engage with interested parties, and attempt to attract additional interested parties that will participate in a competitive auction process contemplated by the Bidding Procedures (defined below). The Debtors propose that the hearing to approve the Bidding Procedures be held on February 3, 2017 (the **"Bid Procedures Hearing"**), with objections to the Bidding Procedures, if any, to be filed on or before **January 27, 2017** **at 4:00 p.m.** prevailing Eastern time (the **"Bid Procedures Objection Deadline"**). The Debtors propose that the bid deadline be set for **March 13, 2017** **at 5:00 p.m.** prevailing Eastern time (the **"Bid Deadline"**), and that the auction of the Debtors' assets (the **"Auction"**), if required, be scheduled for **March 22, 2017** **at 10:00 a.m.** prevailing Eastern time. The Debtors propose that the Court hold the hearing to approve the sale and enter the Approval Order (the **"Sale Hearing"**) on **March 24, 2017** with objections to the relief requested in the Approval Order (other than with respect to the conduct of

the Auction), if any, to be filed on or before **March 17, 2017 at 4:00 p.m.** prevailing Eastern time and objections to the conduct of the Auction, if any, to be filed prior to the commencement of the Sale Hearing.

10.     In accordance with Local Rule 6004-1, the Debtors respectfully represent the following:

(1)     **Sale to an Insider.**  The Buyer is an insider of the Debtors.  Accordingly, the Debtors and the Buyer have provided for the appointment of a special committee of independent members to oversee all matters related to the Chapter 11 Cases and the Sale (the "**Independent Committee**").   The members of the Independent Committee have and will continue to exercise their respective fiduciary duties in evaluating the Sale and determining whether the Sale is in the best interests of the Debtors, their estates, and their creditors.

(2)     **Agreements with Management.**  No proposed or prospective buyer has entered into any agreements with management or key employees regarding compensation or future employment.

(3)     **Private Sale/No Competitive Bidding.**  The Sale is subject to higher or better competing bids and is being conducted pursuant to the competitive bidding process detailed in the Motion.

(4)     **Closing and Other Deadlines.**  The Agreement provides that the Closing will occur by no later than fifteen (15) days following entry of the Approval Order and contains a number of termination rights as specified in Article 4 of the Agreement.

(5)     **Good Faith Deposit.**  The Bidding Procedures provide that all bidders (other than Buyer) will be required to post a good faith deposit in the form of a wire transfer (to a bank account specified by the Debtors), certified check or such other form acceptable to the

Debtors, payable to the order of the Debtors in an amount equal to ten (10) percent of the purchase price.

(6) **Interim Agreements with Proposed Buyer.** The Debtors have not entered into any interim agreements with any proposed buyer.

(7) **Use of Proceeds.** Upon Closing, the net sale proceeds shall be, to the extent permitted and appropriate, treated as cash collateral and shall not be used except in accordance with (a) the Approved Budget (as defined in the DIP Order) to meet obligations payable in connection with the Sale, including payment of the DIP loan, or (b) the Approved Wind-Down Budget (as defined in the DIP Order). The Agreement does not provide for a definitive allocation of sale proceeds between or among the Sellers or collateral.

(8) **Tax Exemption.** No tax exemptions under section 1146(a) of the Bankruptcy Code are contemplated in connection with the Sale.

(9) **Record Retention.** The Purchased Assets include Sellers' Documents, which Buyer agrees to retain and make available to Sellers for a period of two years following the Closing Date.

(10) **Sale of Avoidance Actions.** Buyer will purchase all Avoidance Actions related to the Assigned Contracts or the Assumed Liabilities.

(11) **Requested Findings as to Successor Liability.** The Buyer will be undertaking certain Assumed Liabilities pursuant to the terms of the Agreement. The Buyer will be assuming only those liabilities, and all other liabilities not expressly assumed by Buyer under the Agreement, whether or not incurred or accrued on or after the date on which the contemplated transaction is closed, shall be retained by the Debtors.

(12)    **Sale Free and Clear of Liens and Encumbrances.**  The Debtors are seeking to sell the Assets free and clear of all Liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code, unless otherwise provided in the Successful Bidder's purchase agreement.

(13)    **Credit Bid.**  Buyer shall be permitted to credit bid the full Credit Bid Amount for purposes of the Buyer's initial Qualified Bid and may increase the Credit Bid up to the Credit Bid Cap in submitting any Subsequent Bid.

(14)    **Relief from Bankruptcy Rule 6004(h).**  As noted in the Motion, the Debtors are requesting relief from the 14-day stay imposed by Rules 6004(h) and 6006(d).

### Relief Requested

11.    By this Motion, the Debtors seek the entry of two orders:

(a)    the Bidding Procedures Order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 6004, (i) approving the Bidding Procedures attached to the Bidding Procedures Order as Exhibit 1 (the **"Bidding Procedures"**), (ii) approving the notice attached to the Bidding Procedures Order as Exhibit 2 (the **"Notice of Auction and Sale Hearing"**) of the deadline to bid on the Debtors' assets, (iii) setting the time, date and place of the Auction if one or more Qualified Bids (defined below) are presented in a manner that conforms to the Bidding Procedures, (iv) scheduling the Sale Hearing on **March 24**, **2017**, to consider the entry of the Approval Order; and (v) approving the notice attached to the Bidding Procedures Order as Exhibit 3 (the **"Notice of Assumption and Assignment"**) of the Debtors' intent to assume, assign, and/or transfer to the Successful Bidder or Back-Up Bidder, the contracts commitments, leases, licenses, permits, purchase orders and any other executory contracts and unexpired leases (collectively, the **"Executory Contracts and Unexpired Leases"**) and the corresponding cure amounts required to be paid in connection with such assumption, assignment and/or transfer;

(b)    following the Sale Hearing, the Debtors request the entry of the Approval Order pursuant to Sections 105(a) and 363(b), (f), and (m) of the Bankruptcy Code and Bankruptcy Rule 6004, (i) approving the sale of substantially all of the Debtors' assets to the party holding the highest or otherwise best bid for the assets (the **"Successful Bidder"**) free and clear of all liens, claims, encumbrances, and other interests (other than certain specified assumed liabilities), (ii) authorizing the Debtors to assume and assign to the

Successful Bidder the Executory Contracts and Unexpired Leases; and (iii) granting related and ancillary relief.

12.    The Debtors further request that the sale process occur in accordance with the following timeline:[2]

| Action | Deadline |
|---|---|
| Bid Procedures Objection Deadline | January 27, 2017 |
| Bid Procedures Hearing | February 3, 2017 |
| Sale Objection Deadline and Cure/Assignment Objection Deadline | March 13, 2017 |
| Bid Deadline | March 13, 2017 |
| Auction | March 22, 2017 |
| Sale Hearing | March 24, 2017 |
| Sale Closing Date | March 31, 2017 |

## I.    THE PROPOSED BIDDING PROCEDURES AND AUCTION

13.    Given the desire to sell the Debtors' business expeditiously and minimize administrative expenses, on the one hand, and their desire to ensure a fair and transparent opportunity for all potentially interested parties to participate in the sale process, on the other hand, the Debtors propose that the Bidding Procedures, and related notice and other procedures set forth herein be implemented in connection with the marketing and sale of their assets.

14.    Within three (3) business days after entry of the Bidding Procedures Order, the Debtors (or their agent) will:

(i)    cause the Notice of Auction and Sale Hearing, attached as Exhibit 2 to the Bidding Procedures Order, and a copy of the Bidding Procedures Order to be served by first class mail upon: (a) the Office of the United States Trustee for the District of Delaware (the **"U.S. Trustee"**); (b) counsel to the DIP Agent; (c) all parties who are known to assert a security interest, lien, or claim in any of the assets, if any; (d) all non-Debtor parties to the Executory Contracts and Unexpired Leases and any parties who are

[2] The Debtors, in the exercise of their business judgment, reserve the right to change these sale-related dates in order to maximize the value of the sale.

8

known to claim interests therein; (e) all applicable federal, state, and local taxing authorities; (f) all applicable county and state consumer protection agencies; (g) all applicable state attorneys general; (h) all other government agencies required to receive notice under the Bankruptcy Rules; (i) the 20 largest unsecured creditors of the Debtors; (j) the Debtors' insurance providers; (k) all known parties that have expressed interest to the Debtors, within six (6) months prior to the Petition Date and/or since the Petition Date, in purchasing some or all of the Debtors' assets, and (l) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002 collectively, the "**Sale Notice Parties"**);

(ii)    serve the Notice of Auction and Sale Hearing on any other party appearing on the Debtors' creditor matrix (to the extent not served as a Sale Notice Party); and

(iii)    provide electronic notification of this Motion, the Bidding Procedures Order and the Notice of Auction and Sale Hearing on the Court's electronic case filing (ECF) website, http://ecf.deb.uscourts.gov.

15.    The Debtors believe the proposed Bidding Procedures, which are annexed as Exhibit 1 to the Bidding Procedures Order, will maximize value for the benefit of the Debtor's stakeholders. The Bidding Procedures contemplate an auction process pursuant to which bids will be subject to higher or otherwise better offers. The auction process contemplated in the Bidding Procedures takes into account competing offers from bidders to enter into a sale transaction. The following is a summary of the significant terms of the Bidding Procedures:[3]

| Provision | Description of Provision |
|---|---|
| **Participation Requirements**<br><br>See Bidding Procedures at 2<br>*Local Rule 6004-1(c)(i)(A)(3)* | In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in entering into a Sale for substantially all of the Assets (a **"Potential Bidder"**) must first deliver an executed confidentiality agreement in form and |

---

[3] This summary is provided in accordance with Rule 6004-1(c)(i) of the Local Rules and is qualified in its entirety by reference to the provisions of the Bidding Procedures. Each capitalized term used and not otherwise defined herein shall have the meaning assigned thereto in the Bidding Procedures. To the extent there exists any inconsistency between this summary and the provisions of the Bidding Procedures, the provisions of the Bidding Procedures shall control.

| Provision | Description of Provision |
|---|---|
| | substance satisfactory to the Debtors and their counsel.[4] |
| **Bid Requirements**<br><br>See Bidding Procedures at 2-3<br>*Local Rule 6004-1(c)(i)(A)(1)* | In order to participate in the bidding process and be deemed a "**Qualified Bidder**," a Potential Bidder must submit a "**Qualified Bid**" by the Bid Deadline.<br><br>To constitute a Qualified Bid, a bid must, among other things:<br><br>i.      provide to the Debtors and their counsel the most current audited and latest unaudited financial statements (collectively, the "**Financials**") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of a transaction with the Debtors, (x) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors that demonstrates the Potential Bidder's financial ability to consummate a transaction and (y) a written commitment acceptable to the Debtors of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with a sale transaction (including being bound by the terms and conditions of the Bidding Procedures); <u>provided</u> that if a Potential Bidder is unable to provide Financials, the Debtors may accept such other information sufficient to demonstrate to the Debtors' reasonable satisfaction that such Potential Bidder has the financial wherewithal to consummate a sale transaction. Potential Bidders shall not be allowed to review or obtain the Financials of other Potential Bidders; |
| *Local Rule 6004-1(c)(i)(A)(1);*<br><br>*Local Rule 6004-1(c)(i)(B)(2)* | ii.  include a cover letter identifying whether the Potential Bidder is interested in purchasing substantially all of the Assets;<br>iii.      state that the Potential Bidder offers to |

---

[4] To the extent any party executed a confidentiality agreement prior to the entry of an order approving these Bidding Procedures, such party does not need to execute another confidentiality agreement in order to comply with the Bidding Procedures or become a Qualified Bidder.

| Provision | Description of Provision |
|-----------|------------------------|
| *Local Rule 6004-1(c)(i)(C)(3)* | consummate the sale pursuant to a proposed form of purchase agreement (the "**Purchase Agreement**") and enclose a clean signed copy of the proposed Purchase Agreement; |
| | iv.      include a blackline comparison of the Purchase Agreement to the Agreement, reflecting all of such Potential Bidder's proposed revisions, modifications, amendments, or other changes to the Agreement; |
| | v.      if any bid is conditioned on the assumption and assignment of executory contracts and/or unexpired leases, then such Potential Bidder shall be required to provide evidence of its ability to provide adequate assurance of future performance of such contracts or leases along with the bid; |
| | vi.      either (i) be an all-cash bid or (ii) be accompanied by committed financing; |
| | vii.      provide that the total consideration offered by such bidder under its Purchase Agreement exceeds (a) the consideration offered by the Buyer under the Agreement, including (1) the Credit Bid Amount, (2) the DIP Repayment Amount, (3) the Undisputed Cure Costs, (4) the amount of cash paid to fund the wind-down of the Sellers' estates, and (5) the value of the Assumed Liabilities, <u>plus</u> (b) $250,000 (the "**Initial Overbid Requirement**"); |
| | viii.      contain a list of the Debtors' executory contracts and unexpired leases with respect to which the Potential Bidder seeks assignment from the Debtors; |
| | ix.      confirm that the offer shall remain open and irrevocable; |
| | x.      be accompanied with a certified or bank check or wire transfer in an amount equal to ten |

| Provision | Description of Provision |
|---|---|
| | percent (10%) of the proposed purchase price set forth in the bid as a minimum good faith deposit (the **"Minimum Deposit"**), which Minimum Deposit shall be: (a) deposited into an escrow account pursuant to an executed escrow agreement; and (b) used to fund a portion of the purchase price provided for in the bid;<br><br>xi.      indicate whether the Potential Bidder intends to operate the Assets as a going concern;<br><br>xii.      not be conditioned on obtaining financing or the outcome of any due diligence by the Potential Bidder; and<br><br>xiii.      not request or entitle such Potential Bidder to any break-up fee, expense reimbursement, or similar type of payment;<br><br>xiv.      fully disclose the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation. |
| **Bid Deadline**<br><br>*See* Bidding Procedures at 2<br><br>*Local Rule 6004-1I(i)(B)(1)* | **March 13, 2017 at 5:00 p.m. prevailing Eastern Time** |
| **Bidding Increments**<br><br>*See* Bidding Procedures at 5-6<br>*Local Rule 6004-1(c)(i)(C)(3)* | After the Bid Deadline, the Debtors shall determine which Qualified Bid or combination of Qualified Bids represent the then-highest or otherwise best bid for the Assets (the "**Starting Qualified Bid**"). Prior to the commencement of the Auction, the Debtors shall distribute copies of the Starting Qualified Bid to each Qualified Bidder. The Auction shall commence with the Starting Qualified Bid and then proceed in minimum increments of $250,000 (the "**Overbid Increment**"). The Debtors shall not consider any subsequent bid in the Auction unless any bid after the Starting Qualified Bid |

| Provision | Description of Provision |
|---|---|
|  | exceeds the previous highest bid by at least the Overbid Increment. |
| **Modification of the Bidding Procedures**<br><br>See Bidding Procedures at 6-8<br><br>*Local Rule 6004-1(c)(i)(D)* | All Qualified Bids, the Auction, and the Bidding Procedures are subject to modification and/or additional terms and conditions as are announced by the Debtors  and that are not inconsistent with the Bidding Procedures Order.<br><br>The Debtors reserve the right to modify the Bidding Procedures as they may reasonably determine to be in the best interests of their estates. |
| **Closing with Alternative Backup Bidders**<br>See Bidding Procedures at 6-7<br><br>*Local Rule 6004-1(c)(i)(E)* | At the conclusion of the Auction, the Debtors shall announce the bid or combination of bids made pursuant to the Bidding Procedures Order that represents, in the Debtors' discretion, the highest or otherwise best offer for the Assets (the "**Successful Bid**"). Prior to the entry of the Sale Order, the Debtors shall announce the identity of the Qualified Bidder or combination of Qualified Bidders who submitted the Successful Bid at the Auction (the "**Successful Bidder**").<br><br>Following the entry of the Sale Order, if the Successful Bidder fails to consummate the transaction for any reason, the bid of the Qualified Bidder or combination of Qualified Bidders (the "**Back-Up Bidder**") that submits the next highest or otherwise best bid or combination of bids (the "**Back-Up Bid**") will be deemed the new Successful Bid, and the Debtors will be authorized, but not required, to consummate the transaction with the Back-Up Bidder without further order of the Court. |
| **Expense Reimbursement**<br>*Local Rule 6004-1(c)(i)(C)* | None. |

16.    Any bidder that desires to make a bid will deliver written copies of its bid to (a) counsel for the Debtors, Gibbons P.C., 300 Delaware Avenue, Ste. 1015, Wilmington, Delaware 19801 (Attn: Howard A. Cohen, Esq. (hcohen@gibbonslaw.com) and (b) proposed investment banker for the Debtors, Tudor, Pickering, Holt & Co., 1111 Bagby, Ste. 4900, Houston, Texas 77002 (Attn: Max Barrett (MBarrett@tphco.com) (collectively, the **"Bid Notice Parties"**), so as to be received not later than 5:00 p.m. prevailing Eastern time on March 13, 2017. As soon as immediately practicable after the Auction, but no later than one (1) business day after conclusion of the Auction, the Debtors shall provide electronic notice of the results of the Auction on the Court's docket.

## II.    NOTICE OF SALE HEARING AND NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

17.    The Debtors request that the Court hold the Sale Hearing on March 24, 2017.  The Debtors have also requested that the Court establish **March 17**, **2017 at 4:00 p.m.** (prevailing Eastern time), or such other date that is five (5) days prior to the Sale Hearing (other than with respect to the conduct of the Auction, with objections to the conduct of the Auction to be filed prior to the commencement of the Sale Hearing), or such later date and time as the Debtors may agree, as the deadline for objections to the sale of the Debtors' assets or the relief requested in the Motion with respect to the entry of the Approval Order (the "**Sale Objection Deadline**"). Objections to the Motion and entry of the Approval Order must be in writing, conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and be filed with the Bankruptcy Court and served upon (i) counsel for the Debtors, Gibbons P.C., 300 Delaware Avenue, Ste. 1015, Wilmington, Delaware 19801 (Attn: Howard A. Cohen, Esq. (hcohen@gibbonslaw.com); and (ii) counsel for the DIP Agent, Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022, (Attn: Mitchell A. Seider, Esq. (mitchell.seider@lw.com)

and Annemarie V. Reilly, Esq. (annemarie.reilly@lw.com)) and Richards Layton & Finger, One

Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins)

(collectively, the "**Objection Notice Parties**") by the Sale Objection Deadline.

18.     In order to facilitate the sale of the Debtors' assets and the assumption,

assignment, and/or transfer of the Executory Contracts and Unexpired Leases to the Successful

Bidder contemplated thereunder, within three (3) business days of entry of the Bidding

Procedures Order, the Debtors will serve copies of the Bidding Procedures Order and the Notice

of Assumption and Assignment substantially in the form attached to the Bidding Procedures

Order as Exhibit 3 upon all non-Debtor parties to the Executory Contracts and Unexpired Leases.

If the Debtors or Successful Bidder identifies additional executory contracts or unexpired leases

that might be assumed by the Debtors and assigned to the Successful Bidder or that were not set

forth in the original Notice of Assumption and Assignment, the Debtors will promptly send a

supplemental notice (a **"Supplemental Notice of Assumption and Assignment"**) to the

applicable counterparties to such additional executory contracts and unexpired leases.

19.     In the Notice of Assumption and Assignment, the Debtors will identify the

calculation of the cure amounts that the Debtors believe must be paid to cure all defaults under

the Executory Contracts and Unexpired Leases (the **"Cure Amounts"**). If no amount is listed on

the Notice of Assumption and Assignment with respect to an Executory Contract or Unexpired

Lease, the Debtors believe that there is no Cure Amount applicable to such Executory Contract

or Unexpired Lease.

20.     The Debtors request that unless the non-Debtor party to an Executory Contract or

Unexpired Lease files an objection (the **"Cure Amount/Assignment Objection"**) to (a) its

scheduled Cure Amount and/or (b) to the proposed assumption, assignment and/or transfer of

such Executory Contract or Unexpired Lease by the later of (i) **March 17, 2017 at 4:00 p.m.** (prevailing Eastern time) (or such other date that is five (5) days prior to the Sale Hearing, or such later date and time as the Debtors may agree), or (ii) seven (7) days after service of the relevant Supplemental Notice of Assumption and Assignment (the **"Cure/Assignment Objection Deadline"**) and serves a copy of the Cure Amount/Assignment Objection so as to be received no later than the Cure/Assignment Objection Deadline by the Objection Notice Parties, then such non-Debtor party shall (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Executory Contract or Unexpired Lease and the Debtors shall be entitled to rely solely upon the Cure Amount and (ii) be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract and Unexpired Lease to the Successful Bidder or Back-Up Bidder and shall be forever barred and estopped from asserting or claiming against the Debtors, the Successful Bidder, or Back-Up Bidder or any other assignee of the relevant Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied, under such Executory Contract or Unexpired Lease. Notwithstanding the foregoing, as provided below, each non-Debtor party shall retain the right to object to the assumption, assignment or transfer of its Executory Contract and Unexpired Lease, based solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

21. Any objection challenging a Cure Amount must set forth the cure amount being claimed by the objecting party (the **"Claimed Cure Amount"**) and include appropriate documentation in support thereof. Upon receipt of a Cure Amount/Assignment Objection, the Debtors request that it be granted the authority, but not direction, to resolve any Cure

Amount/Assignment Objection by mutual agreement with the objecting counterparty to any Executory Contract or Unexpired Lease without further order of the Court. In the event that the Debtors and any objecting party are unable to consensually resolve any Cure Amount/Assignment Objection no later than three (3) business days prior to the Sale Hearing, the Debtors will request that the Court resolve such Cure Amount/Assignment Objection at (a) the Sale Hearing or (b) at such other date as the Court may designate, provided that if the subject Executory Contract or Unexpired Lease is assumed and assigned prior to resolution of any Cure Objection, the Claimed Cure Amount asserted by the objecting party (or such lower amount as may be fixed by the Court) shall be deposited by Successful Bidder to be held in a segregated account maintained by the Debtors or such other person as the Court may direct pending further order of the Court or mutual agreement of the parties.

22.    The Debtors, the Successful Bidder or the Back-Up Bidder, as the case may be, may determine to exclude any Executory Contract or Unexpired Lease from the list of Executory Contracts and Unexpired Leases to be assumed and assigned under the Purchase Agreement no later than one (1) business day prior to the Sale Hearing, or, if the Court determines at any hearing on a Cure Amount/Assignment Objection that the applicable cure amount for such contract is greater than the Cure Amount proposed by the Debtors, no later than five (5) business days following the Court's determination. The non-Debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within two (2) business days of such determination.

23.    Within one (1) business day after the conclusion of the Auction, the Debtors will serve a notice identifying the Successful Bidder and Back-Up Bidder (the **"Notice"**) to the non-Debtor parties to the Executory Contracts and Unexpired Leases that have been identified in such

Successful Bid and Back-Up Bid. The Debtors propose that the non-Debtor parties to the Executory Contracts and Unexpired Leases have until the Sale Hearing (the **"Adequate Assurance Objection Deadline"**) to object to the assumption, assignment and/or transfer of such Executory Contract and Unexpired Lease solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code. The Successful Bidder or Back-Up Bidder, as the case may be, shall work with any objecting parties to resolve any disputes and/or concerns regarding the Successful Bidder or Back-Up Bidder's ability to provide adequate assurance of future performance. If, however, any disputes cannot be resolved within five (5) business days after the Adequate Assurance Objection Deadline, either party may seek a determination from this Court solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

**Basis for Relief Requested**

## I.    AUTHORIZING BIDDING PROCEDURES AND AUCTION

24.    Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

25.    Under applicable case law, in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g., In re Abbotts Dairies of Pa., Inc.,* 788 F.2d 143, 147 (3d Cir. 1986); *In re Del. & Hudson Ry. Co.,* 124 B.R. 169, 175-76 (D. Del. 1991) (holding that the following non-exclusive list of factors may be considered by

a court in determining whether there is a sound business purpose for an asset sale: "the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the effect of the proposed disposition of [sic] the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value"). *See also Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (*citing Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)) (noting that the Court defers to the trustee's judgment so long as there is a legitimate business justification); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1). Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions. *See Pitt v. First Wellington Canyon Assocs. (In re First Wellington Canyon Assocs.)*, No. 89 C 593, 1989 WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

26.     The "sound business reason" test requires a trustee or debtor in possession to establish four elements: (1) that a sound business purpose justifies the sale of assets outside the

ordinary course of business; (2) that accurate and reasonable notice has been provided to interested persons; (3) that the trustee or the debtor in possession has obtained a fair and reasonable price; and (4) that the trustee or debtor in possession acted in good faith. *Abbotts Dairies,* 788 F.2d 143; *Del. & Hudson Ry.*, 124 B.R. at 176; *In re Titusville Country Club,* 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); *see also Stephens Indus. Inc. v. McClung,* 789 F.2d 386, 390 (6th Cir. 1986); *Lionel*, 722 F.2d at 1071.

27.     In this case, as set forth more fully herein, the Debtors submit that the decision to proceed with the marketing in accordance with the Bidding Procedures and entry into a sale transaction related thereto is based upon sound business judgment and should be approved. Ample business justification exists to support the decision to sell the Debtors' assets pursuant to the Bidding Procedures, thereby satisfying the first prong of *Abbotts Dairies*. The sale of the Debtors' assets presents the best opportunity to maximize value for their estates, and the process for marketing and selling the assets described in the Bidding Procedures presents the best method by which the Debtors can promote a competitive sale process as well as provide interested parties with accurate and reasonable notice of the sale. The Bidding Procedures allow the Debtors to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction, thereby increasing the likelihood that the Debtors will receive the best possible consideration for their assets.

28.     In addition, the notice described herein and in the Bidding Procedures Order is designed to provide adequate notice to all potentially interested parties. Accordingly, the proposed sale of the Debtors' assets satisfies the second prong of the *Abbotts Dairies* standard.

29.     The Bidding Procedures are also designed to maximize the value received for the Debtors' assets. The Debtors respectfully submit that the relief sought by this Motion is reasonably calculated to maximize value for the benefit of the Debtors and their stakeholders. The process proposed by the Debtors allows for a timely Auction while providing bidders ample time and information to submit a bid. The Bidding Procedures are designed to ensure that the Debtors' assets will be sold for the highest or otherwise best possible price. The Debtors are permitting prospective purchasers to bid on their assets, thereby subjecting the proposed sale to a market check through the solicitation of competing bids in a court-supervised auction process. Accordingly, the Debtors and all parties in interest can be assured that the consideration received for their assets will be fair and reasonable, and therefore the third prong of the *Abbotts Dairies* standard is satisfied. As discussed below, the "good faith" prong of the *Abbotts Dairies* standard is also satisfied here.

### A.     The Bidding Procedures Should be Approved

30.     As noted above, the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales.

31.     The Debtors believe that the Bidding Procedures will establish the parameters under which the value of the Purchased Assets may be tested at an auction and through the ensuing Sale Hearing. Such procedures will increase the likelihood that the Debtors' creditors will receive the greatest possible consideration for their assets because they will ensure a competitive and fair bidding process. They also allow the Debtors to undertake an auction in as expeditious and efficient manner as possible, which the Debtors believe is essential to maximizing the value of the Debtors' estate for their creditors.

32.     The Debtors also believe that the proposed Bidding Procedures will promote active bidding from seriously interested parties and will dispel any doubt as to the best and highest offer reasonably available for the Debtors' assets. In particular, the proposed Bidding Procedures will allow the Debtors to conduct an auction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction. Further, the Bidding Procedures provide the Debtors with the opportunity to consider all Qualified Bids and to select, in their reasonable business judgment, and after consultation with its professionals and any Official Committee, the highest and best offer(s) for the Assets. Moreover, the Bidding Procedures provide the Debtors with the flexibility to modify the Bidding Procedures, if necessary, to maximize value for the Debtors' estates.

33.     At the same time, a prompt sale process is necessary because the Debtors' failure to meet certain "Chapter 11 Milestones" by certain deadlines, including with respect to entry of the Bid Procedures Order, Final DIP Order, and Sale Order are events of default under the DIP Agreement. The process set forth in the proposed Bidding Procedures ensures that the Debtors can comply with such deadlines while providing for a competitive process that maximizes value.

34.     In sum, the Debtors believe that the Bidding Procedures will encourage bidding for the Assets and are consistent with the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. Accordingly, the proposed Bidding Procedures are reasonable, appropriate, and within the Debtors' sound business judgment

**B.     The Form and Manner of Notices Should be Approved**

35.     Under Bankruptcy Rule 2002(a) and (c), the Debtors are required to notify their creditors of the Auction and the sale, including a disclosure of the date, time, and place of the Auction, the terms and conditions of the sale, the date, time, and place of the Sale Hearing, and the deadline for filing any objections to the relief requested herein. Within three (3) days of entry

of the Bidding Procedures Order, the Debtors will serve the Notice of Auction and Sale Hearing by first class mail upon the Sale Notice Parties.

36.     The Debtors submit that the form of Notice of Auction and Sale Hearing, substantially in the form attached as Exhibit 2 to the Bidding Procedures Order, is reasonably calculated to provide timely and adequate notice of the proposed Sale, the Bidding Procedures, the Auction, and the Sale Hearing to the Debtors' creditors and all other parties-in-interest that are entitled to notice, as well as those parties that have expressed a bona fide interest in acquiring the Debtors' assets. Accordingly, the Debtors request that the Court approve the notice procedures set forth in this Motion, including the form and manner of service of the Notice of Auction and Sale Hearing, and that no other or further notice of the Sale, the Bidding Procedures or the Auction is required.

## II.    APPROVAL OF THE SALE IS WARRANTED UNDER SECTION 363 OF THE BANKRUPTCY CODE

37.     The Debtors, exercising their business judgment and in consultation with their advisors and key constituents, have determined that it is in the best interests of the Debtors, their estates, creditors, and other parties-in-interest to conduct a sale of their assets. Based on applicable precedent, the Court should authorize the Debtors to do so as set forth herein to stem the losses resulting from continued operations of the assets and to enable the estates to recover as much as possible the liquidation of the assets as a going concern.

### A.    The Proposed Schedule for the Sale Hearing and Applicable Deadlines is Reasonable and Justified

38.     The assets are operating at a significant loss and represent a drain on the Debtors' liquidity. Thus, the sooner the Debtors can consummate a sale of the assets, the sooner the Debtors can eliminate the liquidity burn. Moreover, delays in the sale process described herein

may cause the Debtors to convert to chapter 7 and cease operations – causing their assets to become virtually worthless.

39.     The Debtors believe that it is crucial that they consummate the Sale on their proposed timeline to maximize value for the Debtors' estates while minimizing administrative expenses and, pursuant to their post-petition financing agreement, they are obligated to obtain the entry of the Approval Order no later than March 31, 2017.  Thus, the Debtors respectfully request that the Court hold the Sale Hearing on March 24, 2017. The Debtors propose to consummate the Sale immediately following the Sale Hearing. Thus, time is of the essence to preserve and maximize the value of the Debtors' assets.

40.     In evaluating proposed expedited sales under section 363 of the Bankruptcy Code, courts have considered debtors' dwindling cash positions, whether an expedited sale is necessary to preserve value, and the number of likely potential buyers. *See In re Tempo Tech. Corp.,* 202 B.R. 363, 370 (D. Del. 1996) (upholding a bankruptcy court's authorization of a debtor's sale of assets on an expedited basis where "the expedited sale was necessary to preserve the value of the Debtor's assets," noting the debtor's dwindling liquidity and that there was a single buyer willing to negotiate purchase terms). *See also In re Titusville Country Club,* 128 B.R. 396, 397 (Bankr. W.D. Pa. 1991) (allowing a sale of country club assets on an expedited basis where timing considerations were based on the seasonal nature of the debtor's business).

41.     As set forth in the First Day Declaration, ample business reasons exist for conducting the sale on the timeline set forth herein. As previously described to the Court, the Debtors and their advisors have analyzed exhaustively the Debtors' business and various strategic alternatives and determined that a sale of the Debtors' assets provides the most likely path to maximize recoveries for the Debtors' estates, their creditors and other parties-in-interest.

Moreover, a sale of the assets on the timeline set forth herein will maximize the possibility of a recovery for the Debtors' creditors while minimizing the administrative expenses of the estates by ensuring an appropriate post-petition marketing process to reengage prior interested parties (and attempt to identify new interested parties). If the Debtors are required to delay consummation of a sale of the assets, the estates would suffer significant detriment from the resulting delay, added post-petition expenses, and would likely be forced to convert these cases to chapter 7 – eliminating any possibility for a value maximizing going-concern sale of the assets.

**B.**    **Sale of Assets Should Be Free and Clear of Liens, Claims and Encumbrances**

42.    The Debtors request authority to sell the assets free and clear of all liens, claims, encumbrances (other than certain assumed liabilities) and other interests in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances, and other interests on or in the assets attaching to the consideration received in the same order or priority and with the same force, validity and effect as such liens, claims, encumbrances, and other interests had with respect to such assets prior to the sale.

43.    Section 363(f) of the Bankruptcy Code allows a debtor to sell property "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is met:

(a)    applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

(b)    the party asserting the lien, claim or interest consents to the sale;

(c)    the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property;

(d)    the interest is the subject of a bona fide dispute; or

(e)    such entity could be compelled to accept a money satisfaction of such claim.

11 U.S.C. § 363(f); *see also In re Elliott*, 94 B.R. 343, 345 (E.D. Pa 1988) (noting that section 363(f) is written in the disjunctive, thereby allowing sales "free and clear" if any one of the subsections is met).

44.    As noted above, the Debtors do not believe any prepetition creditor other than the DIP Agent has a security interest in the assets and the DIP Agent has consented to the sale provided that the Debtors conduct such sale in accordance with milestones contained in the Debtors' agreement with the DIP Agent, thereby satisfying section 363(f)(2) of the Bankruptcy Code. Furthermore, to the extent there are any entities do have an interest in the assets that have not already consented to the sale, such entity could be compelled to accept a money satisfaction of such interest. Specifically, the Debtors propose that any liens, claims, encumbrances, and other interests asserted against the assets attach to any proceeds realized from the sale of such assets, in the same order of priority and subject to the rights, claims, defenses and objections, if any, of all parties with respect thereto.

**C.    The Successful Bidder Should be Granted the Protections of Section 363(m) of the Bankruptcy Code**

45.    As will be set forth in further detail at the Sale Hearing, the Debtors also maintain that the Successful Bidder arising from the Auction, is or would be entitled to the protections afforded by section 363(m) of the Bankruptcy Code.

46.    Specifically, section 363(m) of the Bankruptcy Code provides that:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

47.     While the Bankruptcy Code does not define "good faith," the Third Circuit in

*Abbotts Dairies* held that:

> [t]he requirement that a purchaser act in good faith . . . speaks to
> the integrity of his conduct in the course of the sale proceedings.
> Typically, the misconduct that would destroy a purchaser's good
> faith status at a judicial sale involves fraud, collusion between the
> purchaser and other bidders or the trustee, or an attempt to take
> grossly unfair advantage of other bidders

788 F.2d at 147 (citations omitted); *see generally Marin v. Coated Sales, Inc. (In re Coated

Sales, Inc.)*, No. 89-3704 (KMW), 1990 WL 212899, at * 2 (S.D.N.Y. Dec. 13, 1990) (holding

that a party, to show lack of good faith, must demonstrate "fraud, collusion . . . or an attempt to

take grossly unfair advantage of other bidders"); *see also In re Sasson Jeans, Inc.*, 90 B.R. 608,

610 (S.D.N.Y. 1988) (*quoting In re Bel Air Assocs., Ltd.,* 706 F.2d 301, 305 (10th Cir. 1983)); *In

re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (examining facts of each case,

concentrating on "integrity of [an actor's] conduct during the sale proceedings" (quoting *In re

Rock Indus. Mach. Corp.,* 572 F.2d 1195, 1198 (7th Cir. 1978)).

48.     In addition, as will be set forth in further detail at the Sale Hearing, the Debtors

will negotiate with the Successful Bidder without collusion, in good faith, and from arm's-length

bargaining positions, with give and take on both sides. Further, neither the Debtors nor the

Successful Bidder will engage in any conduct that would cause or permit the Purchase

Agreement to be avoided. Under the circumstances, this Court will have a sufficient factual and

legal basis to find that the Successful Bidder is entitled to all of the protections of section 363(m)

of the Bankruptcy Code.

**D.      The Court Should Approve Procedures Relating to the Assumption and
         Assignment of Executory Contracts and Unexpired Leases**

49.     The Debtors respectfully submit that the Court should approve procedures relating to the assumption and assignment of Executory Contracts and Unexpired Leases. In assuming and assigning the Executory Contracts and Unexpired Leases, the Debtors intend to comply with the provisions of Bankruptcy Code Section 365(f)(2). Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

> The [debtor] may assign an executory contract or unexpired lease of the debtor only if -
>
> (A)     the [debtor] assumes such contract or lease in accordance with the provisions of this section; and
>
> (B)     adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

50.     Under Bankruptcy Code section 365(a), a debtor, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor. 11 U.S.C. § 365(a). Bankruptcy Code section 365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor. This subsection provides:

> (b) (1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee -
>
> (A)     cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
>
> (B)     compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

51.     Section 365(b) of the Bankruptcy Code requires the debtor to cure any defaults under the contract or provide adequate assurance that it will promptly cure such defaults. If there has been a default, the debtor must also provide adequate assurance of future performance under the contract.

52.     With respect to adequate assurance of future performance, the meaning of adequate assurance of future performance depends on the facts and circumstances of each case, but should be given practical, pragmatic construction. *See In re Dura Auto. Sys.*, No. 06-11202 (KJC), 2007 Bankr. LEXIS 2764, at *274 (U.S. Bankr. D. Del. Aug. 15, 2007) ("[t]he meaning of adequate assurance of future performance depends on the facts and circumstances of each case, but should be given practical, pragmatic construction") (internal quotations omitted).

53.     Among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g., Dura Auto. Sys.,* No. 06-11202 (KJC), 2007 Bankr. LEXIS at *274; *In re Bygaph, Inc.,* 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance where a debtor's proposed assignee's "financial resources" and experience as a successful restaurateur "indicate "that the Landlord is adequately assured that the rent will be paid").

54.     The Debtors will demonstrate facts at the Sale Hearing to show the financial wherewithal and the Successful Bidder's willingness and ability to perform under the Executory Contracts and Unexpired Leases. The Sale Hearing will therefore provide the Court and the other interested parties the opportunity to evaluate and, if necessary, challenge the ability of the Successful Bidder to provide adequate assurance of future performance under the Executory Contracts and Unexpired Leases, as required under Bankruptcy Code section 365(b)(1)(C). The

Court should therefore authorize the Debtors to assume and assign the Executory Contracts and Unexpired Leases as set forth herein.

55.    The Debtors also request that the Court include in the Approval Order provisions barring non-Debtor parties to Executory Contracts and Unexpired Leases assumed and assigned under such order, from: (i) asserting any default, loss, or liability against the assignee of such contract based on any event or circumstance arising prior to the date of assignment; or (ii) objecting to the assumption and assignment of its Executory Contract or Unexpired Lease, unless the non-Debtor party timely objects to this Motion.

56.    The Debtors believe that the foregoing procedures provide counterparties to affected contracts notice and a reasonable opportunity to protect their individual interests and should be approved.

## III.    <u>FURTHER RELIEF</u>

57.    The Debtors request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above and in the First Day Declaration, time is of the essence and it is imperative that the Debtors be able to consummate a sale on the timeline proposed. In order to maximize the value of the assets and minimize the estates' unnecessary administrative expenses, the Debtors believe a waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d), to the extent that they apply, is in the best interest of the Debtors' estates and stakeholders.

### <u>Notice</u>

58.    Notice of this Motion will be provided to: (a) the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the DIP

Lender; (d) all known holders of liens upon the Debtors' assets; (e) all known parties that have expressed an interest in purchasing the Debtors' assets; (f) the Internal Revenue Service; (g) the United States Department of Justice; (h) the Securities and Exchange Commission; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Bidding Procedures Order and Approval Order, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: January 9, 2017
Wilmington, Delaware

**GIBBONS P.C.**

By: /s/ *Howard A. Cohen*
Howard A. Cohen (DE 4082)
Natasha M. Songonuga (DE 5391)
300 Delaware Avenue, Suite 1015
Wilmington DE 19801-1761
Telephone:  (302) 518-6330
Facsimile:  (302) 429-6294
Email: hcohen@gibbonslaw.com
        nsongonuga@gibbonslaw.com

**PROPOSED ATTORNEYS FOR THE DEBTORS**