## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CHIEFTAIN SAND AND PROPPANT, LLC, *et al.*, | Case No. 17-10064 (KG) |
| Debtors. ¹ | Jointly Administered **Re: Docket Nos. 17, 70 & 115** |

### ORDER (A) AUTHORIZING AND APPROVING (1) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; AND (2) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH; AND (B) GRANTING RELATED RELIEF

Upon the motion, dated January 9, 2017 (the "Motion"), of Chieftain Sand and Proppant, LLC ("Chieftain") and its affiliated debtor and debtor-in-possession (together, the "Debtors" or the "Sellers") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections 105(a), 363, 365, and 503 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for (i) entry of an order (the "Bidding Procedures Order") (a) establishing bidding and auction procedures (the "Bidding Procedures") related to the sale of the Debtors' assets (the "Sale"); (b) scheduling an auction (the "Auction") and a hearing for such Sale; (c) establishing certain notice procedures for determining cure costs for executory contracts and unexpired leases to be assumed and assigned in connection with such Sale (the "Assumption and Assignment Procedures"); and (d) granting certain related relief; and (ii) entry of an order (this "Sale Order") (a) approving the Sale of the Debtors' assets, free and clear of all Interests (as

---

¹    The Debtors are Chieftain Sand and Proppant, LLC and Chieftain Sand and Proppant Barron, LLC.

defined below); (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases; and (c) granting certain related relief; after holding a hearing on February 3, 2017 (the "Bidding Procedures Hearing"), this Court entered the Bidding Procedures Order on February 3, 2017 [D.I. 115]; and the Auction having been held on March 22, 2017 for the consideration of Qualified Bids and the selection of the Successful Bidder (each as defined in the Bidding Procedures Order); and Mammoth Energy Services, Inc. (the "Purchaser") or its designee (the "Purchaser Designee") having been selected as the Successful Bidder; and upon the Purchaser and the Debtors having entered into that certain Asset Purchase Agreement, dated as of March 13, 2017 (attached hereto as Exhibit A, and as it may be amended, modified, or supplemented in accordance with the terms hereof and thereof, the "Asset Purchase Agreement");[2] and this Court having conducted a hearing on the Motion on March 27, 2017 (the "Sale Hearing"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Motion, the Asset Purchase Agreement, and this Sale Order; and this Court having reviewed and considered the Motion and all objections thereto, and the arguments of counsel made, and the evidence adduced, at the Bidding Procedures Hearing and the Sale Hearing; and upon the entire record of the Bidding Procedures Hearing and the Sale Hearing, and after due deliberation thereon, and good cause appearing therefor:

---

[2]    Capitalized terms used, but not otherwise defined, herein shall have the meaning ascribed to such terms in the Asset Purchase Agreement or the Motion, as applicable.

**THE COURT HEREBY FINDS THAT:**[3]

### Jurisdiction, Final Order and Statutory Predicates

A.      On January 9, 2017 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (this "Court").

B.      This Court has core jurisdiction to hear and determine the Motion under 28 U.S.C. §§ 157(b) and 1334.  Venue of these Chapter 11 Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.      This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

D.      The statutory predicates for the relief sought in the Motion are sections 105(a), 363, 365 and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and the applicable Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

### Notice of the Sale, Auction and the Cure Costs

E.      Actual written notice of the Sale Hearing, the Auction, the Motion, the Sale, and the assumption, assignment and/or transfer of the Assigned Contracts, and a reasonable

---

[3]      The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

opportunity to object or be heard with respect thereto and to the entry of this Sale Order has been afforded to all known interested Persons and entities entitled to receive such notice, including, but not limited to, the following parties: (i) counsel to the Committee, if one is appointed; (ii) counsel to the Sellers; (iii) counsel to the Prepetition Agent and the DIP Agent; (iv) those entities or individuals included on the Debtors' list of 20 largest unsecured creditors on a consolidated basis; (v) the United States Trustee for the District of Delaware (the "United States Trustee"); (vi) all entities (or counsel therefore) known to have asserted any lien, charge, claim or encumbrance on the Acquired Assets; (vii) all federal, state and local regulatory or taxing authorities that are reasonably ascertainable by the Debtors to have a known interest in the Acquired Assets; (viii) known non-debtor counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to the Successful Bidder; (ix) those parties who expressed a bona fide interest in acquiring the assets in the six (6) months preceding the date of the Motion; and (x) those parties who have requested notice pursuant to Bankruptcy Rule 2002, all as set forth on the various declarations, certificates and affidavits of service docketed at Docket Item Numbers 53, 71, 107, 120, 124, 126, 127, 131, 155 and 171.

F.      The Debtors published notice of the Sale, the Bidding Procedures, the Asset Purchase Agreement, the time and place of the proposed Auction, the time and place of the Sale Hearing and the time for filing an objection to the Motion on the website maintained by the Debtors' Claims and Noticing Agent appointed in these Chapter 11 cases on February 3, 2017.

G.      In accordance with the provisions of the Bidding Procedures Order, the Debtors have served notice (the "Assumption and Assignment Notice") of the Executory Contract List upon all of the counterparties to the Assigned Contracts setting forth: (i) the contract(s) and/or lease(s) that may be assumed by the Debtors and assigned to the Purchaser; (ii) the name and

4

address of the non-Debtor counterparty thereto; (iii) notice of the proposed effective date of the assignment (subject to the right of the Debtors and/or the Purchaser to withdraw such request for assumption and assignment of the Assigned Contract(s) prior to the Closing); (iv) the amount, if any, determined by the Debtors to be necessary to be paid to cure and compensate for any existing default in accordance with sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "Cure Costs"); (v) a list of any nonmonetary obligations that the Debtors believe must be satisfied; and (vi) the deadlines by which any such counterparty must file an objection to the proposed assumption and assignment of any Assigned Contract.

H.    The service of such Assumption and Assignment Notice (i) was good, sufficient and appropriate under the circumstances of these Chapter 11 Cases, (ii) provided such counterparties with a full and fair opportunity to object to such assumption, assignment, or transfer and to the proposed Cure Costs set forth in the Assumption and Assignment Notice; and (iii) was in compliance with the Bidding Procedures Order and applicable provisions of the Bankruptcy Rules and Local Rules. Accordingly, no other or further notice need be given in connection with such assumption, assignment, or transfer or with respect to the amount of Cure Costs.

I.    As evidenced by the affidavits of service previously filed with this Court and as approved under the Bidding Procedures Order: (i) due, proper, timely, adequate and sufficient notice of the Motion, the Auction, the Sale Hearing, the assumption and assignment of the Assigned Contracts, and the Sale has been provided to all parties-in-interest; (ii) such notice was, and is, good, sufficient and appropriate under the circumstances of these Chapter 11 Cases, provided a fair and reasonable opportunity for parties-in-interest to object, and to be heard, with respect thereto, and was provided in accordance with sections 102(1), 363 and 365 of the

5

Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007 and 9014, and the applicable Local Rules; and (iii) no other or further notice with respect to such matters is necessary or shall be required.

### Business Judgment

J.      The Debtors have demonstrated good, sufficient and sound business purposes and justifications for, and compelling circumstances to promptly consummate, the Sale and other transactions contemplated by the Asset Purchase Agreement and the Ancillary Agreements, including, without limitation, the assumption, assignment, and/or transfer of the Assigned Contracts, (collectively, the "Transactions") pursuant to sections 363 and 365 of the Bankruptcy Code, prior to and outside of a plan of reorganization, and such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, and their creditors.  Such business reasons include, but are not limited to, the facts that: (i) there is substantial risk of diminution of the value of the Acquired Assets if the Sale is not consummated promptly; (ii) the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets; (iii) the Asset Purchase Agreement and the Closing will present the best opportunity to realize the value of the Debtors and avoid decline and devaluation of the Debtors' businesses; and (iv) unless the Sale is concluded expeditiously as provided for in this Sale Order and pursuant to the Asset Purchase Agreement, potential creditor recoveries may be substantially diminished.

### Good Faith of the Purchaser; No Collusion

K.      The Debtors and the Prepetition Agent (as an Affiliate of the Debtors) have provided for the appointment of a special committee of independent members to oversee all matters related to the Chapter 11 Cases and the Transactions (the "Independent Committee").

6

The members of the Independent Committee have exercised their respective fiduciary duties in evaluating the Transactions and have independently determined that the Transactions are in the best interests of the Debtors, their estates, and their creditors.    None of the Purchaser, the Purchaser Designee, nor any of their respective Representatives or Affiliates have exercised control over the Debtors, the Independent Committee, or the manner in which the Transactions were approved and authorized by the Debtors and the Independent Committee.

L.    The Purchaser and the Purchaser Designee, as applicable, are purchasing the Acquired Assets in good faith, and each is a good faith purchaser, within the meaning of section 363(m) of the Bankruptcy Code, and each is therefore entitled to, and granted pursuant to paragraph 29 below, the full rights, benefits, privileges, and protections of that provision, and each has otherwise proceeded in good faith in all respects in connection with the Transactions in that, *inter alia*: (i) the Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring some or all of the Acquired Assets; (ii) the Purchaser complied with the provisions in the Bidding Procedures Order; (iii) the Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (v) neither the Purchaser nor the Purchaser Designee has violated section 363(n) of the Bankruptcy Code by any action or inaction; and (vi) the negotiation and execution of the Asset Purchase Agreement and Ancillary Agreements were at arms' length and in good faith.

M.    None of the Debtors, the Purchaser, or the Purchaser Designee, or any of their respective Representatives, has engaged in any conduct that would cause or permit the Asset Purchase Agreement or any of the Ancillary Agreements, or the consummation of the

7

Transactions, to be avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any Person in connection therewith.

**Highest and Best Offer**

N.      [Intentionally omitted.]

O.      [Intentionally omitted.]

P.      The Debtors conducted an auction process in accordance with, and have otherwise complied in all material respects with, the Bidding Procedures Order.  The Debtors and their professionals have, under the circumstances, adequately and appropriately marketed the Acquired Assets in compliance with the Bidding Procedures and the Bidding Procedures Order. The auction process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any Person or entity to make a higher or otherwise better offer to purchase the Acquired Assets.  The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Acquired Assets.

Q.      The Asset Purchase Agreement constitutes the highest and best offer for the Acquired Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination that the Asset Purchase Agreement constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

R.      The Asset Purchase Agreement represents a fair and reasonable offer to purchase the Acquired Assets under the circumstances of these Chapter 11 Cases.  No other Person or

8

entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtors' estates than the Purchaser.

S.    Approval of the Motion and the Asset Purchase Agreement, and the prompt consummation of the Transactions contemplated thereby, is in the best interests of the Debtors, their creditors, their estates and other parties-in-interest.

T.    At the Auction, Badger Mining Corporation submitted the next highest or otherwise best bid (the "Back-Up Bid) and was designated to be the Back-Up Bidder (as defined in the Bidding Procedures Order) in accordance with the Bidding Procedures Order.  The Back-Up Bid is irrevocable until the earlier of (i) ninety (90) days after entry of this Sale Order or (ii) the closing of the Sale to the Purchaser, the Purchaser Designee, or the Back-Up Bidder.

### No Fraudulent Transfer; Not a Successor

U.    The Asset Purchase Agreement and Ancillary Agreements were not entered into, and the Transactions are not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors under applicable Law, and none of the Parties to the Asset Purchase Agreement or any of the Ancillary Agreements are consummating the Transactions with any fraudulent or otherwise improper purpose.  The Purchase Price for the Acquired Assets constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable Laws of the United States, any state, territory or possession or the District of Columbia.

V.    Except as expressly set forth in the Asset Purchase Agreement with respect to the Assumed Liabilities, the Purchaser and the Purchaser Designee shall have no liability,

9

responsibility, or obligations of any kind or nature whatsoever for any Interest (as defined below) of or against the Debtors, or otherwise related to the Acquired Assets, by reason of the transfer of the Acquired Assets to the Purchaser or such Purchaser Designee.  The Purchaser and the Purchaser Designee shall not be deemed, as a result of any action taken in connection with the Transactions, to: (1) be a successor (or other such similarly situated party) to any of the Debtors (other than with respect to the Assumed Liabilities as expressly stated in the Asset Purchase Agreement); or (2) have, *de facto* or otherwise, merged or consolidated with or into any of the Debtors.  The Purchaser and the Purchaser Designee are not acquiring or assuming any Interest, except as expressly set forth in the Asset Purchase Agreement with respect to the Assumed Liabilities.

**Validity of Transfer**

W.      Subject to the entry of this Sale Order, the Debtors have full corporate power and authority to (i) perform all of their obligations under the Asset Purchase Agreement and the Ancillary Agreements, and the Debtors' prior execution and delivery thereof and performance thereunder is hereby ratified in full, and (ii) consummate the Transactions.  The Asset Purchase Agreement and Ancillary Agreements, and the Transactions contemplated thereby, have been duly and validly authorized by all necessary corporate action.  No further consents or approvals are required for the Debtors to consummate the Transactions or otherwise perform their respective obligations under the Asset Purchase Agreement or the Ancillary Agreements, except in each case as otherwise expressly set forth in the Asset Purchase Agreement or applicable Ancillary Agreements.

X.      As of the Closing Date, the transfer of the Acquired Assets to the Purchaser or the Purchaser Designee, including, without limitation, the assumption, assignment and transfer of the

10

Assigned Contracts, will be a legal, valid, and effective transfer thereof, and vests the Purchaser and the Purchaser Designee, as applicable, with all right, title, and interest of the Debtors in and to the Acquired Assets, free and clear of all Interests accruing or arising any time prior to the Closing Date, except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Encumbrances and the Assumed Liabilities.

### Section 363(f) Is Satisfied

Y.      The Purchaser and the Purchaser Designee would not have entered into the Asset Purchase Agreement and would not consummate the Transactions contemplated thereby if the sale of the Acquired Assets, including the assumption, assignment and transfer of the Assigned Contracts, to the Purchaser or the Purchaser Designee, as applicable, were not free and clear of all Interests of any kind or nature whatsoever (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Encumbrances and Assumed Liabilities), or if the Purchaser or the Purchaser Designee, any of their respective Subsidiaries or Affiliates, or any of their respective Representatives, would, or in the future could, be liable for any of such Interests.

Z.      The Debtors may sell or otherwise transfer the Acquired Assets free and clear of all Interests because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. Those holders of Interests against the Debtors, their estates or any of the Acquired Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Interests who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Interests, if any, attach to the proceeds of the Sale ultimately attributable to the Acquired Assets in which such creditor alleges or asserts an Interest, in the same order of priority, with the same validity,

11

force and effect, that such creditor had immediately prior to consummation of the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

AA.    As used in this Sale Order, the term "Interest" includes, in addition to the types of claims described in paragraph BB below, all of the following, in each case to the extent against or with respect to any of the Debtors or in, on, or against or with respect to any of the Acquired Assets: liens (as defined in section 101(37) of the Bankruptcy Code, and whether consensual, statutory, possessory, judicial or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code), debts (as defined in section 101(12) of the Bankruptcy Code), reclamation claims, Encumbrances, obligations, Liabilities (including Liabilities arising under any Environmental Laws), demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights of first refusal, rights of setoff or recoupment, or interests of any kind or nature whatsoever, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, whether imposed by agreement, understanding, Law, equity or otherwise, including, but not limited to, (i) Interests that purport to give to any Person a right or option to effect a setoff against or any forfeiture, modification or termination of the Debtors' interests in the Acquired Assets, or any similar rights; (ii) Interests arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, (iii) Interests that are or constitute, or that arise in connection with or with respect to, any Excluded Liability; (iv) Interests that arise from or in connection with any bulk sales or similar law, and (v) Interests arising under or in connection with any acts, or failures to act, of

12

any of the Debtors or any of the Debtors' predecessors, Affiliates, or Subsidiaries, or any of their respective Representatives, including, but not limited to, Interests arising under any doctrines of successor, transferee, or vicarious liability, violation of the Securities Act of 1933, the Securities Exchange Act of 1934, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable Law or otherwise.

BB.    To the greatest extent permitted by applicable law, except as expressly set forth in the Asset Purchase Agreement with respect to the Assumed Liabilities, and without limiting the nature or scope of paragraphs Z and AA above, the transfer of the Acquired Assets, including the assumption, assignment and/or transfer of the Assigned Contracts, to the Purchaser or the Purchaser Designee, as applicable, shall not subject the Purchaser or the Purchaser Designee, or their respective Subsidiaries or Affiliates (other than the Debtors), or any of their respective Representatives to, or subject any Acquired Asset to or provide recourse for, any Liability or Encumbrance whatsoever with respect to the operation or condition of the Business or any of the Acquired Assets prior to the Closing or with respect to any facts, acts, actions, omissions, circumstances or conditions existing, occurring or accruing with respect thereto prior to the Closing Date, including, without limitation, any Liability or Encumbrance arising from any of the following: (i) any employment or labor agreements, consulting agreements, severance arrangements, change in control agreements or other similar agreements to which any Debtor is or was a party, (ii) any pension, welfare, compensation or other employee benefit plans, agreements, practices, and programs, including without limitation, any pension plan of the Debtors, (iii) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit

13

plans, agreements, practices and programs and any obligations with respect thereto that arise from the Employee Retirement Income Security Act of 1974, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Americans with Disabilities Act of 1990, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 or the Worker Adjustment and Retraining Notification Act, (iv) workmen's compensation, occupational disease or unemployment or temporary disability insurance claims, (v) environment liabilities, debts, claims or obligations which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act or any Environmental Laws, (vi) products liability or warranties, (vii) any bulk sales or similar law, (viii) any litigation by or against the Debtors and (ix) the Laws of the United States, any state, territory or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity, including, without limitation, any theory of antitrust, products liability, or successor, vicarious or transferee liability. For the avoidance of doubt, the Liabilities and Encumbrances set forth in this paragraph are included in the defined term "Interests" for all purposes of this Sale Order.

### Assumption, Assignment and/or Transfer of the Assigned Contracts

CC.  The assumption, assignment and/or transfer of the Assigned Contracts to the Purchaser and the Purchaser Designee, as applicable, pursuant to the terms of this Sale Order is integral to the Asset Purchase Agreement and is in the best interests of the Debtors and their estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

14

DD.    To the extent necessary or required by applicable Law, the Debtors have or will have as of the Closing Date: (i) cured, or provided adequate assurance of cure, of any default existing prior to the Closing Date with respect to the Assigned Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) provided compensation, or adequate assurance of compensation, to any party for any actual pecuniary loss to such party resulting from such default, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. The respective amounts set forth in the Executory Contract List attached to the Debtors' Assumption and Assignment Notice (or any Supplemental Notice of Assumption and Assignment served in accordance with the Assumption and Assignment Procedures) are the sole amounts necessary under sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code to cure all such monetary defaults and pay all actual pecuniary losses under the Assigned Contracts.

EE.    The promise of the Purchaser or the Purchaser Designee, as applicable, to perform the obligations first arising under the Assigned Contracts after their assumption and assignment to the Purchaser or the Purchaser Designee, as applicable, constitutes adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the counterparties to such Assigned Contracts. Any objections to the foregoing, the determination of any Cure Costs, or otherwise related to or in connection with the assumption, assignment or transfer of any of the Assigned Contracts to the Purchaser or the Purchaser Designee are hereby overruled on the merits or otherwise treated as set forth in paragraph 3 below. Those non-Debtor parties to Assigned Contracts who did not object to the assumption, assignment or transfer of their applicable Assigned Contract, or to their applicable Cure Costs, are deemed to have consented thereto for all purposes of this Sale Order.

15

FF.    Pursuant to section 2.8 of the Asset Purchase Agreement, the Purchaser shall maintain certain rights to modify the list of the Assigned Contracts, after the date of this Sale Order and before the Closing Date as set forth in such section.  Such modification rights include, but are not limited to, the right of the Purchaser, prior to the Closing Date, to designate a Contract for assumption by the Debtors and assignment to the Purchaser or Purchaser Designee, as well as for rejection by the Debtors.  The Purchaser would not have agreed to the Transactions without such modification rights.  The notice and opportunity to object provided to non-Debtor counterparties to such Assigned Contracts and to other parties in interest, as set forth in the Assumption and Assignment Procedures contained in the Bidding Procedures Order, fairly and reasonably protects any rights that such counterparties and other parties in interest may have with respect to such Contracts.

### Compelling Circumstances for an Immediate Sale

GG.    To maximize the value of the Acquired Assets and preserve the viability of the business to which the Acquired Assets relate, and to reduce the amount of postpetition debtor-in-possession financing borne by the Debtors, it is essential that the Sale of the Acquired Assets occur within the time constraints set forth in the Asset Purchase Agreement.  Time is of the essence in consummating the Sale.  The Sale must be approved and consummated promptly in order to preserve the value of the Acquired Assets.  Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006 with regard to the Transactions contemplated by this Sale Order, the Asset Purchase Agreement and the Ancillary Agreements.

HH.    Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price under the Asset Purchase Agreement, the proposed transfer of the Acquired Assets to the Purchaser or Purchaser Designee, as applicable, constitutes a

reasonable and sound exercise of the Debtors' business judgment, is in the best interests of the Debtors, their estates, and their creditors, and should be approved.

II.      The consummation of the Transactions is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105, 363 and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Transactions.

JJ.      The Sale does not constitute a *de facto* plan of reorganization or liquidation or an element of such a plan for any of the Debtors, as it does not and does not propose to: (i) impair or restructure existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtors; (iii) circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests, compromise controversies or extend debt maturities.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

## General Provisions

1.      The Motion and the relief requested therein are granted and approved, and the Transactions contemplated thereby and by the Asset Purchase Agreement and Ancillary Agreements are approved, in each case as set forth in this Sale Order.

2.      This Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order are incorporated herein by reference.

3.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived, resolved, or otherwise settled as announced to this Court at the Sale Hearing

or by stipulation filed with this Court, and all reservations of rights included therein, are hereby denied and overruled on the merits.

### Approval of Asset Purchase Agreement; Binding Nature

4.      The Asset Purchase Agreement and the Ancillary Agreements, and all of the terms and conditions thereof, are hereby approved.

5.      The offer for the Acquired Assets, as embodied in the Asset Purchase Agreement, was deemed a Qualified Bid (as defined in the Bidding Procedures Order) and is the highest and best offer for the Acquired Assets (thereby providing a greater recovery for the Debtors' estates than would be provided by any other available alternative), and the Asset Purchase Agreement and the Ancillary Agreements and all of the terms and conditions thereof, and the Transactions contemplated thereby, and the application of the cash portion of the Purchase Price to repayment of the DIP Loan in full, are hereby approved in all respects.

6.      The consideration provided by the Purchaser for the Acquired Assets under the Asset Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code and any other applicable Law, and the Transactions may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision of the Bankruptcy Code.

7.      Pursuant to sections 363 and 365 of the Bankruptcy Code, the Debtors are authorized and empowered to, and shall, take any and all actions necessary or appropriate to (a) consummate the Sale and the other Transactions pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement and the Ancillary Agreements, and (b) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as

may be reasonably necessary or appropriate to the performance of their respective obligations as contemplated by the Asset Purchase Agreement and the Ancillary Agreements, in each case without further notice to or order of this Court. The Transactions authorized herein shall be of full force and effect, regardless of any Debtor's lack or purported lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

8.      This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in any Debtor, all holders of any Claim(s) (whether known or unknown) against any Debtor, any holders of Interests against, in or on all or any portion of the Acquired Assets, all non-Debtor parties to the Assigned Contracts, the Purchaser, the Purchaser Designee and all successors and assigns of the foregoing, including, without limitation, any trustee, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of these Chapter 11 Cases.

**Transfer of Acquired Assets Free and Clear of Interests; Injunction**

9.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtors are authorized and directed to transfer the Acquired Assets, including but not limited to the Assigned Contracts, to the Purchaser or the Purchaser Designee, as applicable, on the Closing Date in accordance with the Asset Purchase Agreement and the Ancillary Agreements. Upon and as of the Closing Date, such transfer shall constitute a legal, valid, binding and effective transfer of such Acquired Assets and the Purchaser or the Purchaser Designee, as applicable, shall take title to and possession of such Acquired Assets free and clear of all Interests (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Encumbrances and Assumed Liabilities).

10.     All such Interests shall attach solely to the proceeds of the Sale with the same validity, priority, force and effect that they now have as against the Acquired Assets, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.  This Sale Order shall be effective as a determination that, on and as of the Closing, all Interests of any kind or nature whatsoever (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Encumbrances and Assumed Liabilities) have been unconditionally released, discharged and terminated in, on or against the Acquired Assets.  The provisions of this Sale Order authorizing and approving the transfer of the Acquired Assets free and clear of Interests shall be self-executing, and neither the Debtors nor the Purchaser (or the Purchaser Designee) shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Sale Order.

11.     Upon the Closing, the liens on the assets of the Debtors granted under the Prepetition Credit Documents to secure the Prepetition Credit Agreement Indebtedness shall be deemed released solely with respect to the Acquired Assets, as applicable, and the Debtors shall take all actions required under the Asset Purchase Agreement to confirm the removal of any such liens.  For the avoidance of doubt, the liens granted under the Prepetition Credit Documents shall attach to the proceeds of the Sale (including, without limitation, any claims arising from or related to the Asset Purchase Agreement and any proceeds thereof, and any other damages or other amounts recovered by the Debtors in connection with the enforcement of the Sale, this Sale Order, or the Bidding Procedures Order) with the same validity, priority, force and effect that they now have against the Acquired Assets.  The Purchase Price shall be allocated to the Purchased Assets in the manner set forth in the Asset Purchase Agreement.  In addition, upon the

20

Closing and the receipt by the DIP Agent of the DIP Repayment Amount, all claims against the Debtors and their estates under the DIP Credit Agreement shall be deemed satisfied, and the DIP Agent and the DIP Lenders shall have no further obligation to make any extensions of credit thereunder.

12.    Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, all Persons and entities holding Interests (other than the Permitted Encumbrances and Assumed Liabilities) are hereby forever barred, estopped and permanently enjoined from asserting their respective Interests against the Purchaser and the Purchaser Designee, any of their respective Subsidiaries and Affiliates, and any of their respective Representatives, and each of their respective property and assets, including, without limitation, the Acquired Assets. On and after the Closing Date, the Purchaser or the Purchaser Designee, as applicable, shall be authorized to execute and file such documents, and to take all other actions as may be necessary, on behalf of each holder of an Interest to release, discharge and terminate such Interests in, on and against the Acquired Assets as provided for herein, as such Interests may have been recorded or may otherwise exist. On and after the Closing Date, and without limiting the foregoing, the Purchaser or the Purchaser Designee, as applicable, shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect or otherwise notice any Interest that is extinguished or otherwise released pursuant to this Sale Order. This Sale Order constitutes authorization under all applicable jurisdictions and versions of the Uniform Commercial Code for the Purchaser or the Purchaser Designee to file UCC termination statements with respect to all security interests in or liens on the Acquired Assets.

13.     On and after the Closing, the Persons holding an Interest (other than a Permitted Encumbrance or an Assumed Liability) shall execute such documents and take all other actions as may be reasonably necessary to release their respective Interests in the Acquired Assets, as such Interests may have been recorded or otherwise filed.  The Purchaser or the Purchaser Designee, as applicable, may, but shall not be required to, file a certified copy of this Sale Order in any filing or recording office in any federal, state, county or other jurisdiction in which any Debtor is incorporated or has real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge and terminate any of the Interests as set forth in this Sale Order as of the Closing Date.  All persons and entities that are in possession of any portion of the Acquired Assets on the Closing Date shall promptly surrender possession thereof to the Purchaser or the Purchaser Designee at the Closing.

14.     The transfer of the Acquired Assets to the Purchaser or the Purchaser Designee pursuant to the Asset Purchase Agreement and Ancillary Agreements does not require any consents other than specifically provided for in the Asset Purchase Agreement.

15.     This Sale Order is and shall be binding upon and govern the acts of all Persons and entities (including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, and secretaries of state, federal and local officials) who may be required by operation of law, the duties of their office, or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease. Each of the foregoing Persons and entities shall accept for filing any and all of the documents and instruments necessary and appropriate to

release, discharge and terminate any of the Interests or to otherwise consummate the Transactions contemplated by this Sale Order, the Asset Purchase Agreement or any Ancillary Agreement.

### Assigned Contracts; Cure Costs

16.    Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing Date, the Debtors' assumption, and assignment and transfer to the Purchaser or Purchaser Designee, of the Assigned Contracts is hereby authorized and approved in full subject to the terms set forth below.  The Debtors shall, on or prior to the Closing, pay the Cure Costs (or reserve the Undisputed Cure Costs as set forth below) and cure any and all other defaults and breaches under the Assigned Contracts so that such Contracts may be assumed by the Debtors and assigned to Purchaser or Purchaser Designee on the Closing Date in accordance with this Sale Order, the Asset Purchase Agreement and the Ancillary Agreements.  To the extent any Debtor is responsible for any Cure Costs pursuant to the terms of the Asset Purchase Agreement or Ancillary Agreements, the Purchaser may, upon prior written notice to the Debtors and in its sole discretion, (i) pay such amount(s) on behalf of the Debtors, in which case the Debtors shall have no further responsibility therefor, and (ii) offset such amount(s) against any amount(s) Purchaser may owe the Debtors (including by deducting such amounts, at the Closing, from the Purchase Price).

17.    Upon and as of the Closing, the Debtors are authorized and empowered to, and shall, assume, assign and/or transfer each of the Assigned Contracts to the Purchaser or the Purchaser Designee, as applicable, free and clear of all Interests (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Encumbrances and Assumed Liabilities).  The payment of the applicable Cure Costs (if any), or the reservation by the Debtors

23

of an amount of cash that is equal to the lesser of (i) the amount of any cure or other compensation asserted by the applicable non-Debtor counterparty as required under section 365 of the Bankruptcy Code or (ii) the amount approved by order of this Court to reserve for such payment (such lesser amount, the "Alleged Cure Claim") shall, pursuant to section 365 of the Bankruptcy Code and other applicable Law, (a) effect a cure, or provide adequate assurance of cure, of all defaults existing thereunder as of the Closing Date and (b) compensate, or provide adequate assurance of compensation, for any actual pecuniary loss to such non-Debtor party resulting from such default.  Accordingly, on and as of the Closing Date, other than such payment or reservation, none of the Debtors, the Purchaser or the Purchaser Designee shall have any further liabilities or obligations to the non-Debtor parties to the Assigned Contracts with respect to, and the non-Debtor parties to the Assigned Contracts shall be forever enjoined and barred from seeking, any additional amounts or claims (as defined in section 101(5) of the Bankruptcy Code) that arose, accrued or were incurred at any time on or prior to the Closing Date on account of the Debtors' cure or compensation obligations arising under section 365 of the Bankruptcy Code.  The Purchaser or the Purchaser Designee, as applicable, has provided adequate assurance of future performance under the relevant Assigned Contracts within the meaning of section 365(f) of the Bankruptcy Code.

18.    To the extent any provision in any Assigned Contract assumed or assumed and assigned (as applicable) pursuant to this Sale Order (including, without limitation, any "change of control" provision) (a) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, such assumption or assignment, or (b) is modified, breached or terminated, or deemed modified, breached or terminated by any of the following: (i) the commencement of these Chapter 11 Cases, (ii) the insolvency or financial condition of any Debtor at any time before the

24

closing of these Chapter 11 Cases, (iii) any Debtor's assumption or assumption and assignment (as applicable) of such Assigned Contract, or (iv) the consummation of the Transactions, then such provision shall be deemed modified so as to not entitle the non-Debtor party thereto to prohibit, restrict or condition such assumption or assignment, to modify or terminate such Assigned Contract, or to exercise any other default-related rights or remedies with respect thereto, including, without limitation, any such provision that purports to allow the non-Debtor party thereto to recapture such Assigned Contracts, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith. All such provisions constitute unenforceable anti-assignment provisions that are void and of no force and effect pursuant to sections 365(b), 365(e) and 365(f) of the Bankruptcy Code.

19.    All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser or the Purchaser Designee, as applicable, of the Assigned Contracts have been satisfied. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser or the Purchaser Designee, as applicable, shall be fully and irrevocably vested with all right, title and interest of the Debtors in and under the Assigned Contracts, and each Assigned Contract shall be fully enforceable by the Purchaser or the Purchaser Designee, as applicable, in accordance with its respective terms and conditions, except as limited or modified by the provisions of this Sale Order. Upon and as of the Closing, the Purchaser or the Purchaser Designee, as applicable, shall be deemed to be substituted for the Debtors as a party to the applicable Assigned Contracts and, accordingly, the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts.

2534068.3  114307-93983

20.     Upon the payment of the applicable Cure Costs or reservation of the Alleged Cure Claim, if any, the Assigned Contracts will remain in full force and effect, and no default shall exist, or be deemed to exist, under the Assigned Contracts as of the Closing Date nor shall there exist, or be deemed to exist, any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

21.     The rights of the Purchaser to modify the list of the Assigned Contracts, after the date of this Sale Order and up to the Closing Date as set forth in section 2.8 of the Asset Purchase Agreement are hereby approved.

22.     All non-Debtor counterparties to the Assigned Contracts shall be deemed to have consented to such assumption and assignment under section 365(c)(1)(B) of the Bankruptcy Code and the Purchaser or Purchaser Designee shall enjoy all of the Debtors' rights, benefits and privileges under each such Assigned Contract as of the applicable date of assumption and assignment without the necessity to obtain any non-Debtor parties' written consent to the assumption or assignment thereof.

23.     Nothing in this Sale Order, the Motion, or in any notice or any other document is or shall be deemed an admission by the Debtors that any Assigned Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code.

24.     The failure of the Debtors, the Purchaser or the Purchaser Designee, as applicable, to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of its respective rights to enforce every term and condition of the Assigned Contracts.

2534068.3  114307-93983

**Additional Injunction; No Successor Liability**

25.     Effective upon the Closing Date and except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Encumbrances and Assumed Liabilities, all Persons and entities are forever prohibited and permanently enjoined from (i) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral or other proceeding), to collect, recover or offset any Interest;  (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order with respect to an Interest, (iii) creating, perfecting or enforcing any Interest, or (iv) asserting any setoff, right of subrogation or recoupment of any kind with respect to an Interest, in each case as against the Purchaser or the Purchaser Designee, any of their respective Subsidiaries or Affiliates, or any of their respective Representatives, or any of their respective property or assets, including the Acquired Assets.

26.     To the greatest extent permitted by applicable law, the Transactions contemplated by the Asset Purchase Agreement and the Ancillary Agreements do not cause there to be, and there is not (i) a consolidation, merger, or *de facto* merger of the Purchaser or any Purchaser Designee, on the one hand, with or into the Debtors or the Debtors' estates, on the other hand, or vice versa; (ii) a substantial continuity between the Purchaser or any Purchaser Designee, on the one hand, and the Debtors or the Debtors' estates, on the other hand, (iii) a common identity between the Purchaser or any Purchaser Designee, on the one hand, and the Debtors or the Debtors' estates, on the other hand, or (iv) a mere continuation of the Debtors or their estates, on the one hand, with the Purchaser or any Purchaser Designee, on the other hand.

27.     To the greatest extent permitted by applicable law, except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Encumbrances and Assumed

2534068.3  114307-93983

Liabilities, the transfer of the Acquired Assets, including, without limitation, the assumption, assignment and transfer of any Assigned Contract, to the Purchaser or any Purchaser Designee shall not cause or result in, or be deemed to cause or result in, the Purchaser or the Purchaser Designee, any of their respective Subsidiaries or Affiliates (other than the Debtors), or any of their respective Representatives, having any liability, obligation, or responsibility for, or any Acquired Assets being subject to or being recourse for, any Interest whatsoever, whether arising under any doctrines of successor, transferee or vicarious liability, breach of fiduciary duty, aiding or abetting breach of fiduciary duty or otherwise, whether at Law or in equity, directly or indirectly, and whether by payment, setoff, recoupment, or otherwise.

28.     For the avoidance of doubt, notwithstanding the consummation of the Transactions and the employment by the Purchaser or Purchaser Designee of certain Persons previously employed by the Debtors, (i) the Purchaser and Purchaser Designees shall not have any obligations or liabilities to any employee of the Debtors or in respect of any employee benefits owing to any employee of the Debtors by the Debtors or by any plan or program administered by the Debtors or for the benefit of the Debtors' employees, and (ii) any obligations of the Purchaser and Purchaser Designees to any such Person shall be expressly limited to (i) those obligations expressly agreed upon by the Purchaser or Purchaser Designee (if any) with such Person, and (ii) those obligations explicitly assumed by the Purchaser or Purchaser Designee (if any) under the Asset Purchase Agreement.

## Good Faith

29.     The Transactions contemplated by this Sale Order, the Asset Purchase Agreement and the Ancillary Agreements are undertaken by the Purchaser and the Purchaser Designee without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy

2534068.3   114307-93983

Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale and other Transactions shall not alter, affect, limit, or otherwise impair the validity of the Sale or such other Transactions (including the assumption, assignment and/or transfer of the Assigned Contracts), unless such authorization and consummation are duly stayed pending such appeal. Each of the Purchaser and Purchaser Designee is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and hereby granted, the full rights, benefits, privileges and protections of section 363(m) of the Bankruptcy Code.

## Other Provisions

30.    The Debtors and their estates shall not pursue any Avoidance Actions to the extent set forth in section 2.1(k) of the Asset Purchase Agreement.

31.    The documents to be placed in escrow in accordance with Sections 4.3 and 4.4 of the Asset Purchase Agreement, assuming the due approval, execution and delivery, where applicable, by Purchaser or the Purchaser Designees, are effective, as of the Funding Date, (i) for Sellers to convey the Owned Real Property and Improvements to Purchaser or, if applicable, the Purchaser Designees and (ii) for Sellers to assume and to assign to Purchaser or, if applicable, the Purchaser Designees the Permits and Assigned Contracts (unless otherwise expired) set forth in Section 10.3(d) of the Seller Disclosure Schedule, and prior to Closing, the Debtors, the DIP Agent, the Prepetition Agent and the Prepetition Lenders, shall take no action to impair the effectiveness of the transfers of the Acquired Assets to the Purchaser or Purchaser Designee.

32.    Upon the Closing Date, (a) the DIP Repayment Amount shall be paid to the DIP Agent for application in accordance with the DIP Loan Documents and the DIP Order until the DIP Loan is Paid in Full and (b) all additional Sale proceeds (including, without limitation, any

claims arising from or related to the Asset Purchase Agreement and any proceeds thereof, and any other damages or other amounts recovered by the Debtors in connection with the enforcement of the Sale, this Sale Order, or the Bidding Procedures Order) shall be distributed as follows: (i) *first*, to a segregated account held by the DIP Agent solely in an amount sufficient to fund the wind-down of the Debtors' estates and the closure of the Chapter 11 Cases in accordance with a wind-down budget prepared by the Debtors and acceptable to the DIP Agent in its sole discretion, which amount shall constitute cash collateral of the Prepetition Secured Parties (as defined in the DIP Order) and be subject in all respects to the Prepetition First Priority Liens (as defined in the DIP Order) and (ii) *second*, to the Prepetition Agent for application in accordance with the Prepetition Credit Documents and the DIP Order until the Prepetition Credit Agreement Indebtedness is Paid in Full and the Debtors' obligations in connection with the Prepetition Agent's and the Prepetition Lenders' Adequate Protection are satisfied. Notwithstanding the foregoing, the Debtors shall be permitted to pay all obligations due pursuant to the Approved Budget on or after the Effective Date of the Sale. Capitalized terms used in this paragraph but not otherwise defined herein shall have the meanings ascribed to them in the DIP Order.

33.    The Purchaser is hereby authorized, in its discretion, in connection with consummation of the Transactions to allocate the Acquired Assets, Assumed Liabilities, and Assigned Contracts among its Affiliates, Subsidiaries, designees, assignees, and/or successors in a manner as it, in its discretion, deems appropriate and such Person shall be entitled to all of the rights, benefits, privileges and protections of the Purchaser as are accorded to the Purchaser under this Sale Order, and the Debtors shall, to the extent set forth in the Asset Purchase Agreement and the Ancillary Agreements, cooperate with and take all actions reasonably

requested by Purchaser to effectuate any of the foregoing. In the event that the Purchaser designates any Purchaser Designee to acquire any Acquired Assets, including, without limitation, any Assigned Contracts, then any reference to the "Purchaser" in this Sale Order shall be deemed to be a reference to "the Purchaser and/or such applicable Purchaser Designee," unless the context requires otherwise.

34.    Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Chapter 11 Cases, (b) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order. To the extent of any such conflict or derogation, the terms of this Sale Order shall govern.

35.    Pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the stays provided in Bankruptcy Rules 6004(h) and 6006(d) are hereby expressly waived and shall not apply. Accordingly, the Debtors are authorized and empowered to close the Sale and other Transactions immediately upon entry of this Sale Order.

36.    Nothing in this Sale Order shall modify or waive any closing conditions or termination rights in Articles IV and X of the Asset Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

37.    No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Transactions.

38.    All payment or reimbursement obligations of the Debtors owed to the Purchaser or any Purchaser Designee pursuant to the Asset Purchase Agreement or the Ancillary

Agreements shall be paid in the manner provided therein, without further notice to or order of this Court. All such obligations shall constitute allowed administrative claims against each of the Debtors on a joint and several basis, with first priority administrative expense status under sections 503(b) and 507(a)(2) of the Bankruptcy Code. Until satisfied in full in cash, all such obligations shall continue to have the protections provided in this Sale Order, and shall not be discharged, modified or otherwise affected by any reorganization plan for the Debtors.

39.    The failure specifically to include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Asset Purchase Agreement be authorized and approved in its entirety.

40.    The Asset Purchase Agreement and Ancillary Agreements may be modified, amended or supplemented in a writing signed by the parties thereto and in accordance with the terms thereof, without further notice to or order of this Court; provided that any such modification, amendment or supplement shall not have a material adverse effect on the Purchaser, the Purchaser Designee, or the Debtors' estates unless approved by order of this Court.

41.    This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b), to, among other things, (i) interpret, implement, and enforce the terms and provisions of this Sale Order, the Asset Purchase Agreement, the Ancillary Agreements, and any amendments thereto and any waivers and consents given thereunder, (ii) compel delivery of the Acquired Assets to the Purchaser or Purchaser Designee; (iii) enforce the injunctions and limitations of liability set forth in this Sale Order, and (iv) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Assigned Contracts.

42.    **Knapp Railroad Builders, Inc. ("Knapp")**    The Debtors, the Prepetition Secured Parties (as defined in the DIP Order), the DIP Lenders (as defined in the DIP Order), the DIP Agent, and Knapp (collectively, the "Parties") have resolved Knapp's limited objection to the Sale [Docket No. 161] by agreeing that:

(i)     Knapp's $161,220 lien (the "Knapp Lien") under Wisconsin law on the Debtors' facility located at 331 27th Street, New Auburn, Wisconsin shall attach to the proceeds of the Sale pending final agreement among the Parties as to the ultimate allowance and payment of the Knapp Lien as set forth herein;

(ii)    the Debtors shall reserve such $161,220 of Sale proceeds (the "Reserved Proceeds") pending further Order of the Court authorizing their ultimate distribution, which the Parties anticipate will occur in connection with the confirmation of a chapter 11 plan in these cases;

(iii)   the Parties agree that in connection with resolving any dispute over the priority of the Knapp Lien, Knapp shall receive at least 80% of the Reserved Proceeds (the "Consensual Payment") upon entry of an order of the Court authorizing such distribution; provided that if (a) a chapter 11 plan is not confirmed within six months after the closing on the Sale, or (b) the Debtors' move to convert their chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, then the Debtors shall pay Knapp the Consensual Payment without the need for additional authorization by the Court, in which case payment of the remaining 20% of the Reserved Proceeds shall (a) remain subject to the agreement among the Parties and

33

approval by the Court (which may occur in connection with the confirmation of a chapter 11 plan in these cases), or (b) be resolved by the Court in the event that the Parties cannot reach a consensual resolution.

For the avoidance of doubt, the Prepetition First Priority Liens (as defined in the DIP Order) shall continue in full force and effect on the Reserved Proceeds in accordance with the DIP Order, subject to the Knapp Lien.

43.     Nothing in this Sale Order or the Asset Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order. Nothing in this Sale Order or the Asset Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

44.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

45.     The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the provisions of this Sale Order and the terms and conditions of the Asset Purchase Agreement and the Ancillary Agreements.

46.     The rules of construction set forth in section 12.14 of the Asset Purchase Agreement shall apply to this Sale Order, *mutatis mutandis.*

47.     To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion, the terms of this Sale Order shall govern.  To the extent there are any inconsistencies between the terms of this Sale Order, on the one hand, and the Asset Purchase Agreement or any Ancillary Agreement, on the other hand, the terms of this Sale Order shall govern.

Dated:  March 27, 2017
       Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

35